FRAUENTHAL *v.* SLATEN.

Opinion delivered July 12, 1909.

1. MUNICIPAL CORPORATIONS—DEDICATION OF PUBLIC PLACE.—An owner of land who files a plat thereof showing blocks, lots and squares and sells lots with reference to such plat is held to have dedicated such streets, alleys and squares irrevocably. (Page 355.)

2. SAME—HOW INTENTION TO DEDICATE DETERMINED.—The fact of dedication depends upon the intention of the owner to dedicate, but the intention to which the courts give heed is not an intention hidden in the mind of the landowner, but an intention manifested by his acts. (Page 355.)

3. SAME—DEDICATION OF PUBLIC SQUARES.—The word "square," used on a plat to designate a certain portion of ground within the limits of a city or town, indicates a public use. (Page 355.)

Appeal from Cleburne Chancery Court; *George T. Humphries,* Chancellor; affirmed.

*J. H. Harrod* and *R. W. Robins,* for appellant.

1. On the question of dedication by the plat, the *whole plat* must be considered in order to determine the extent of the dedication. 10 L. R. A. 673. The certificate attached to the plat clearly limits the dedication to the streets described in the deed. The principles that govern the dedication of streets and alleys differ greatly from those that govern the dedication of parks. The first are indispensable to the use of lots, while parks are only indirectly beneficial to them. Hence dedication of streets may be established by acts and circumstances which would be wholly insufficient to show the dedication of parks. 21 Mich. 319; 129 Mass. 167; 11 Allen 5. Nothing in the plat either directly or indirectly refers to Spring Square as a public park; but, if there was a dedication, that was defeated by the act of Frauenthal in taking possession of and fencing the square in 1882 and hold possession to this date. 11 L. R. A. (N. S.) 129.

2. Excluding the plat, is dedication shown? (1) The rule is that there can be no dedication by the acts of an owner in connection with the town or public unless it appears that he had an unmistakable intention to permanently abandon his property. 21 N. Y. 477. (2) Undisputed facts in the case show that Frauenthal's *ownership* was always recognized. Acts done by the town in making improvements, since they were by the consent and sufferance of Frauenthal, cannot be made the foundation of an adverse claim of title. The use of the park and springs, being permissive, was not adverse, and no rights could be acquired thereby. 23 Ark. 296. (3) The suggestion that the property be left off the tax books came from the town officials; but if *he* had requested that it be not taxed, that would be the highest evidence that he had not abandoned it or dedicated it to the public. (4) Frauenthal is not estopped to claim the park by his having omitted to notify purchasers of lots that he owned the park. He was under no obligations to do so.

*M. E. Vinson* and *S. Brundidge, Jr.,* for appellees.

"An owner of land by laying out a town upon it, platting it into lots and blocks, and selling lots by reference to the plat, dedicates the streets and alleys to the public use, and such dedication is irrevocable. He will also be held to have dedicated to the public use squares, parks or rather public places marked as such on the plat." 77 Ark. 221 and cases cited; Brewster on Convey-

ancing, § 95. Not only so, but appellants are estopped to deny dedication of the park by reason of sales of lots by reference to the plat to numerous purchasers without any claim of private ownership of the park to any of the purchasers. Their rights are paramount. 54 Fed. 248; 82 Ark. 294; 77 Ark. 178; 80 Ark. 489. It is immaterial that Frauenthal built a fence around the park, etc., before the town was in existence. After it was incorporated, the town took charge of the park, and has ever since held it. Subsequent possession by the dedicator, if taken, will not be presumed to be adverse to the town. 58 Ark. 142; 68 Ark. 68. The facts and undisputed testimony show a complete dedication of Spring Park. 2 Abbott on Mun. Corp. § § 729, 730; 70 N. W. 237; 12 N. J. Eq., 547; 56 Cal. 478; 47 Ky. 232; 20 N. J. L. 86; 11 Wend. 487; 45 N. E. 236; 6 N. E. 866; 43 N. E. 943; 17 Ill. 251; 6 Pet. 432; 154 U. S. 235; 56 Ill. 311.

McCULLOCH, C. J. This suit involves a controversy between Max Frauenthal and his wife, Sallie Frauenthal, and son Mortimer Frauenthal, on the one side, and the incorporated town of Sugar Loaf (or Heber, as it is sometimes called) and certain citizens thereof, on the other side, concerning the ownership of a block or square of ground in said town known as "Spring Square." The chancellor rendered a decree in favor of the plaintiffs, and the defendants, Frauenthal and others, appealed.

The question at issue is whether or not the defendants have irrevocably dedicated said property to public use as a park or square. In the year 1881 Max Frauenthal purchased the tract of 680 acres of land on which is now situated the town of Sugar Loaf. The land was then situated in Van Buren County, but it is now in Cleburne County, which was thereafter created by an act of the Legislature. In the same year Frauenthal executed to the Sugar Loaf Springs Company a deed to a large portion of said tract, and in 1883 that company platted 200 acres of it into the townsite known as Sugar Loaf, which plat was duly filed for record and recorded.

The plat contained blocks and lots, intersected by streets and alleys, and the property in controversy, which comprises about four blocks of the usual size designated on the plat, was marked "Spring Square." A section of the plat, showing this square and the surrounding blocks and streets, is herewith shown:

Another block or square was designated on the plat as "Court Square." It does not appear that the Sugar Loaf Springs Company was ever incorporated, but Max Frauenthal was president, and one Watkins was secretary of the unincorporated company or association, and Frauenthal was the principal owner or shareholder. For some time thereafter lots were sold with reference to this plat, and deeds of conveyance were executed by Frauenthal as president and Watkins as secretary of said company. Some time later the other individuals composing said company reconveyed the remainder of the lots embraced in the plat to Frauenthal, and lots have from time to time been sold off to individuals. Soon afterwards Cleburne County was created, and the town of Sugar Loaf was made the county seat. Frauenthal agreed to convey Court Square to the county for the purpose of building a court house thereon, and this was done.

There are six springs in this park known as Spring Square, from which fine medicinal water flows—white, black and red sulphur. These waters are said to possess many curative properties, and the place was then noted as a summer resort. Since then it has grown in popularity year by year, and has many visitors,

sometimes as many as 1,500 each summer. The public generally has always had free use of the park and the waters therein contained. Notwithstanding the fact that the public has always enjoyed the freest use of the park, Frauenthal has, according to the preponderance of the evidence, maintained some sort of supervision over it. Before the alleged act of dedication, he built a fence around the square, but afterwards, when it rotted down, it was replaced at the expense of the town. He built a tool house in the park, and for a time employed a man to look after the park. The town has from year to year expended small sums of money on repairs, aggregating something over $600, but it appears that these repairs have usually been made after consulting Frauenthal, who lived there a portion of the time, and in Memphis, Tenn., and in Conway, Ark., the balance of the time, usually visiting the place several times each year. There is some conflict in the evidence, and numerous citizens of the place have testified in the case as to the precise relation of Frauenthal to the property. We take it to be settled, however, by the preponderance of the evidence that he exercised some kind of supervision over it, and was consulted whenever any change was to be made. It appears clearly that the character of this supervision was for the protection of the public and for the public benefit. There is no evidence that he manifested any intention of using the property for private purposes.

In the year 1901 Frauenthal and wife conveyed all of the unsold lots (not including Spring Square) to the Bank of Conway, and on the same day the bank reconveyed the same property to his wife, Mrs. Sallie Frauenthal. Frauenthal paid taxes on the square, together with the other property, for several years after the alleged dedication, but finally, at the suggestion of the town authorities, and with the assent of the county assessor, Spring Square was left off the tax books, and no taxes have been paid thereon since then, the property being entirely omitted from the tax books. Shortly before the institution of this suit, and after there was a prospect of a railroad coming to the town, Frauenthal proposed to put the property back on the tax books and pay taxes thereon. These matters were introduced in evidence as tending to establish the fact that Frauenthal treated the square or park as public property. On the other hand, Frau-

enthal insists that the omission of the property from the tax books was suggested by the town authorities, and consented to by him merely as an act of grace in view of the fact that he was getting no benefit from the property for the time being, and that the public at large was enjoying the use thereof. He denies that that was a permanent arrangement, or that any dedication was ever intended.

The law bearing on the question of dedication of property to the public use is well settled by the decisions of this court. An owner of land, by laying out a town upon it, platting it into blocks and lots, intersected by streets and alleys, and selling lots by reference to the plat, dedicates the streets and alleys to the public use, and such dedication is irrevocable. He will also be held to have thereby dedicated to the public use squares, parks and other public places marked as such on the plat. The dedication becomes irrevocable the moment that these acts concur. *Hope* v. *Shiver*, 77 Ark. 177; *Davies* v. *Epstein, Id.* 221; *Dickinson* v. *Ark. City Imp. Co., Id.* 570; *Brewer* v. *Pine Bluff*, 80 Ark. 489; *Stuttgart* v. *John*, 85 Ark. 520.

The fact of dedication depends upon the intention of the owner to dedicate to the public, as clearly and unequivocally manifested. But it is held that "the intention to which courts give heed is not an intention hidden in the mind of the landowner, but an intention manifested by his acts." *Davis* v. *Epstein, supra;* 13 Cyc. 452; Elliott on Roads and Streets, § § 124, 156.

The word "square," as used on a plat to designate a certain portion of ground within the limits of a city or town, indicates a public use. This is said to be the proper and settled meaning of the term in its ordinary and usual signification. *Rowzee* v. *Peirce*, 75 Miss. 846; *Trustees of Methodist Episcopal Church* v. *Hoboken*, 33 N. J. L. 13.

In the New Jersey case above cited, an owner of real property filed a map or plat, showing lots and blocks with intersecting streets and alleys and certain spaces, one of which was marked with the word "square;" and the court held this to be an irrevocable dedication of the space to the public use. The court there said: "It may be stated, as a general rule, that when the owner of urban property, who has laid it off into lots with streets, avenues and alleys intersecting the same, sells his lots with refer-

ence to a plat in which the same is so laid off, or when, there being a city map on which this land is laid off, he adopts such map by reference thereto, his acts will amount to a dedication of the designated streets, avenues and alleys to the public. The same principle is applicable to urban lands to be used as an open square."

In the case of *Mayor of Bayonne* v. *Ford,* 43 N. J. L., 292, an owner (R. Graves by name) platted a tract of land into building lots, selling some of them by reference to this plat; on said plat was a small section marked "Annette Park, now belonging to R. Graves." *Held,* that this became public property by dedication.

The same court in *Price* v. *Inhabitants of Plainfield,* 40 N. J. L. 608, laid down as a definite rule of law that where a landowner caused a map of a tract of land to be filed in the county clerk's office, on which streets and building lots were delineated, and one block was set apart and marked with the word "park," and when such landowner subsequently made conveyances of certain of said lots to various purchasers, such conduct was conclusive evidence of a dedication of the "park."

The Connecticut court in *Pierce* v. *Roberts,* 57 Conn. 31, held that where an owner laid out land in lots, bounded on the inside by an elliptical half-acre, marked "park" on the plat, and sold the lots with reference to the plat, this constituted a dedication. In that case there was an element in the facts of representation to purchasers that the space marked "park" was to be kept open for all the lot owners; but the court in its opinion distinctly held that the designation on the plat was sufficient to constitute a dedication, saying: "In the first place, the word 'park' on the map cannot be eliminated from the deeds, but is, on the contrary, an inseparable part of those deeds, and thereby the grantors are estopped from appropriating the land in question to a use inconsistent with such designation.......... Why not give like effect to the plan and designation of the 'park?' That surely is a prominent and attractive feature of the plat, and indeed essential to its completeness. The lots for sale were all numbered in order from one to twenty-two. The center piece contained no number to facilitate a selection by a purchaser, but on the contrary it was given a name which in itself imported a design to set it apart and reserve it for common benefit of all."

In *Archer* v. *Salinas City,* 93 Cal. 43, the court held that "the word 'park' written upon a block of land designated upon a map of property within the limits of an incorporated city or town signifies an open space intended for the recreation and enjoyment of the public, and this signification is the same whether the word be used alone or with some qualifying term, as 'Central Park.'"

Judge Dillon, in his work on Municipal Corporations (§ 645) says: "The word 'park' written upon a block upon a map of city property indicates a public use; and conveyances made by the owners of the platted land, by reference to such map, operate conclusively as a dedication of the block;" citing *Price* v. *Plainfield,* 40 N. J. L. 608; *Maywood Co.* v. *Maywood,* 118 Ill. 61.

Also, in *Rhodes* v. *Brightwood,* 145 Ind. 21, it was held that an irrevocable dedication of land is effected by designating certain land on a map filed in the county recorder's office as a 'park,' and by selling lots with reference to the map.

There is little if any distinction between the words "park" and "square," and when used in this way they mean substantially the same thing. The defendants in this case are not aided by the extrinsic evidence as to the intention of the dedicator, for, as before stated, though it shows that he intended to reserve some measure of supervision over the property, it was yet altogether for the public use. And it does not appear that any private rights therein were intended to be reserved. Nor is he aided by the fact that in the certificate of dedication it is shown that certain streets were dedicated to the public use, as the evidence shows the area in controversy was also intended to be used by the public, and was set apart for that use.

We are therefore of the opinion that the decree of the chancellor was correct, and the same is affirmed.

FRAUENTHAL, J., disqualified and not participating.