POSKEY *v.* BRADLEY.

4-7713                                        189 S. W. 2d 806

Opinion delivered October 8, 1945.

Rehearing denied November 12, 1945.

*Chas. F. Cole,* for appellant.

*W. M. Thompson,* for appellee.

MILLWEE, J. J. T. Williams owned certain lands in Independence county upon which a school building was erected in 1906. The building was used as a schoolhouse until 1940 or 1941 when the district was consolidated with another district. After the building ceased to be used as a schoolhouse, the people of the community continued to use it for church services and a community meeting place.

J. T. Williams died in 1909 and appellee, W. A. Parr, obtained deeds from the widow and heirs of Williams to the lands upon which the building was erected. These deeds purported to convey title in fee simple without reservation as to that part of the lands occupied by the school district. On November 19, 1941, W. A. Parr and wife sold and conveyed by warranty deed to appellee, Claude C. Bradley, 120 acres of land which included the 40-acre tract upon which the school building was located. Appellee Bradley moved on a 40-acre tract adjoining the lands upon which the school building was located soon after his purchase from Parr. Early in August, 1944, Bradley began tearing down the building for the purpose of erecting a barn on the adjoining 40-acre tract. Appellants brought this suit in behalf of themselves and other citizens of the Williams community to restrain appellee

Bradley from injuring and destroying the building and for damages alleged to have already been done.

It was alleged in the complaint that J. T. Williams had agreed for the school district to construct the school building upon his property, and that the building was used by the district for school purposes until it was donated to appellants by the directors of the district for the use and benefit of the community for a place of worship and public meetings. It was further alleged that appellants and other members of the community were in possession and had made improvements to the building, and that appellants had no adequate remedy at law.

A temporary order restraining appellee Bradley from further destruction of the property was issued, after appellants had posted bond in the sum of $100. On September 1, 1944, the amount of the bond was increased to $300 upon motion of appellee Bradley. Upon failure of appellants to execute bond in the increased amount within the 10 days fixed by the court, the temporary order was dissolved, and Bradley razed and removed the building.

Appellee Bradley then filed an answer and motion to make W. A. Parr a party defendant. The answer contained a general denial and alleged that W. A. Parr had permitted the school district to erect a building on the lands with the understanding that same could be used during the existence of the district, but that said district had been dissolved and title to the property had reverted to Parr; that he had purchased the property upon such representations by Parr for a price $300 in excess of what he would have paid for such lands had said building not been situated thereon or reserved to the use of appellants; that he had a warranty deed to the property and had suffered damages in the sum of $100 by reason of issuance of the temporary restraining order. There was a prayer for recovery of the value of the building from Parr upon a breach of warranty of title, in the event it should be determined that Parr did not own the lands.

Parr was made a party defendant and the cause proceeded to trial on November 16, 1944, resulting in a

dismissal of appellants' complaint for want of equity. This appeal followed. We now proceed to a review of the testimony upon which the trial court based his order of dismissal of the suit.

Appellant L. E. Poskey testified that the school building was erected by School District No. 25 in 1906 on the lands of J. T. Williams; the district later became District No. 103, which was a few years later consolidated with District No. 48; after consolidation, the building was used for church and Sunday School and as a place for children to gather while waiting for the school bus; that on July 31, 1940, the directors of District 48 executed a quitclaim deed to appellants, as trustees, to a parcel of land two acres long and one acre wide in the southeast corner of the 40-acre tract where the building was located. This deed purported to convey the property to appellants as trustees for the use of citizens of the Williams community, as a place of public worship and other public meetings. Witness obtained the signatures of the directors to the deed, which was delivered to him but was never acknowledged. The people of the community have recently put new seats in the building.

Frank Latting testified he had lived within one-half mile of the building site for 67 years and hauled most of the material for the building. Witness was present in 1906 when J. T. Williams told the directors, including Almus Williams, son of J. T. Williams, that if they wanted to put the school building on his property he would give the district a deed to two acres of land, which he pointed out. This conversation took place at the site where the building was erected, and others present have since died. At that time, the building site was in a large field, but was fenced outside by J. T. Williams after the building was erected. Witness worked on the building after it was damaged by a storm in 1927 and knew about the directors going to see W. A. Parr about getting a deed to the property. The school district has had continuous possession of the property since 1906.

R. K. Forrester testified that he was employed by Almus Williams and built the schoolhouse in 1906. He

did not see J. T. Williams there while the house was under construction, but knew that he later relocated his fence to put the school site on the outside.

Appellee Bradley testified that he bought the land from Parr and had lived on a 40-acre tract adjacent to the school building site for two years at the time of the trial. He and Parr looked at the building about two weeks before he bought it and Parr told him the school building belonged to him (Parr) since the consolidation. About three years after witness bought the land, he began tearing the building down for the construction of a barn on the 40-acre tract where he resided. Witness has known the property 18 years. No school was held in the house after witness bought it, but they had church and Sunday School there without objection from witness until he began tearing it down. Nobody told him the building belonged to the district, but the people objected when he said anything about tearing it down.

Appellee W. A. Parr testified that he lived near the property for 37 years before he moved to Jackson county. He was a director of district 25 at one time and knew nothing about J. T. Williams giving two acres to the district for building purposes. He tried to buy the property from Williams before the house was built. He later bought the lands from the widow and heirs of J. T. Williams, receiving a deed from the widow in 1911 and the last deed from the heirs in 1920. After the storm damaged the school building in 1927 the directors came to his home and tried to buy the property, but he did not tell them whether or not he would sell it to them. When witness went with Bradley to look at the lands, they had dinner with a big crowd at the schoolhouse and the ladies present insisted on witness keeping the building so they could use it. There was no reservation of the school property in the deeds to him or in the deeds to Bradley. Witness knew the property had been used by the school district and general public since 1906 and never attempted to fence the property or otherwise exercise any control over it. When the school district was planning consolidation with district 48, he executed and

delivered a statement to the directors of the consolidated district as follows:

"Tuckerman, Arkansas,

"June 28, 1940.

"I agree to allow the use of the property known as Williams School House and school yard for community meeting place as long as the people of the community use it as such.

"(signed) W. A. Parr."

Witness did not read the statement before he signed it, but the directors wanted him to give them permission to use the building for church purposes as long as he owned it and he did. Bradley knew that the school building was used as a community meeting place at the time he bought the property. Witness permitted the district to use it for school and community purposes, but did not offer to give or sell them the property, and has never conceded that they own it.

Kenneth Reeves testified that he went with the directors of the district to see if they could obtain a deed from Parr, after the building was damaged by a storm in 1927. Parr refused to give a deed, but told the directors to go ahead and rebuild the schoolhouse, and the property would belong to Parr whenever school was discontinued.

W. N. Osborne testified that he was a member of the County Board of Education and went with the directors to see Parr about keeping the building for community purposes, if the district was consolidated with No. 48, and was present when the agreement was made. Witness knew nothing about Williams giving a deed.

Appellant D. C. Brewington testified he had never seen the deed which the school district delivered to appellant Poskey, but knew about it and that Poskey was to handle the matter. He had known the property since the schoolhouse was built and it had always been fenced off from the other lands.

Appellants contend they have acquired absolute title to the lands in controversy by a parol gift from J. T.

Williams, followed by possession and the making of valuable improvements by the school district. The chancellor found that the evidence adduced did not satisfy the rule which prescribes the quantum of proof necessary in such cases. We do not decide this question for the reason that a careful consideration of the foregoing evidence convinces us that there was a valid common-law dedication of the property involved in this suit to the public use: first, by J. T. Williams for the use of the school district as a schoolhouse in 1906; second, by W. A. Parr, in 1940, to the use of the people of Williams community for public worship and a meeting place. We deem it appropriate to set out some of the principles applicable to the issues in this case.

In 16 Am. Jur. 348 the following definition of a common-law dedication is given: "Dedication is the intentional appropriation of land by the owner to some proper public use. More specifically, it has been defined as an appropriation of realty by the owner to the use of the public and the adoption thereof by the public having respect to the possession of the land and not the permanent estate, express when explicitly made by oral declaration, deed, or note, implied when there is an acquiescence in a public use, and applying in this country not only to highways, but to public squares, commons, burying grounds, school lots, lots for church purposes, and pious and charitable uses generally." And, at 16 Am. Jur. 360, the author says: "Neither a written grant nor any particular words or ceremonies, or form of conveyance, are necessary to render the act of dedicating land to public uses effectual at common law. Anything which fully demonstrates the intention of the donor and the acceptance by the public works the effect. Words are unnecessary if the intent can be gathered from other sources. A parol dedication is good as well as a dedication by deed or by unsealed writing." In discussing the owner's power of revocation of dedication at pages 410-11 of the same volume we find the following statement: "As distinguished from a mere revocable license and an unaccepted offer to dedicate, a dedication once completed is in its nature irrevocable, as where, for example, it is

completed by an express dedication and an express acceptance. He cannot resume control of or convey the land free from the public easement. The owner or his successor can reclaim the use of the property only when the object and purpose of making the dedication have completely failed. Even though a common-law dedication does not pass the legal title to the land out of the party making it, it is sufficient to defeat an action for the recovery of the possession of the property as against those who are using it in accordance with the purpose and object for which it was dedicated."

There was clearly a dedication of the property to the use of the school district by J. T. Williams in 1906 which was accepted and continuously enjoyed by the public for a period of 35 years without objection from the original owner or his successors in title. On June 28, 1940, and prior to consolidation of District No. 103 with District No. 48, W. A. Parr signed the statement heretofore set out which, in our view, reveals an intent to dedicate the property to the continued use of the people of the community as a meeting house and place of worship. Parr testified that he only agreed to public use of the property so long as he owned it, but other witnesses deny this, and the signed statement contains no such limitation. While the fact of dedication depends upon the intention of the owner to dedicate, the intention to which the courts give heed is not an intention hidden in the mind of the landowner, but an intention manifested by his acts. 26 C. J. S., Dedication, § 11, p. 63; *Frauenthal* v. *Slaten,* 91 Ark. 350, 121 S. W. 395.

The offer of dedication by Parr was accepted and the property used by the members of the community for three years and became irrevocable until the object of making the dedication had failed, unless it may be said that appellee Bradley was an innocent purchaser without notice of the dedication. Was Bradley an innocent purchaser? He had known the property and observed the public nature of its use for 18 years prior to his purchase. Only two weeks prior to such purchase he had visited the property with the seller and participated in a public dinner there with members of the community. If he did not

have actual notice of the dedication before purchase, he knew the facts·of possession and continuous use of the property by the people of the community, and this was sufficient to put him upon inquiry. As stated in 26 C. J. S., page 141: ''The general rules as to the title taken by *bona fide* purchasers without notice apply when the encumbrance is a dedication to the public use. However, a purchaser who is put on inquiry must take notice of a dedication to the public; and usually the state of the property itself, or the records, constitute notice by which the purchaser is bound, whether his knowledge of the easement is actual or not.'' This statement is in harmony with our decisions. See *Morris* v. *School District*, 63 Ark. 149, 37 S. W. 569; *Barrett* v. *Durbin*, 106 Ark. 332, 153 S. W. 265. We conclude, therefore, that Bradley was not an innocent purchaser.

In the case of *Conner* v. *Heaton*, 205 Ark. 269, 168 S. W. 2d 399, under facts somewhat similar to those in the instant case, we held there was a valid dedication of lands for church and other community purposes, and that interested citizens were capable of taking and holding the lands for the public use. There we ordered the cause remanded and the damages determined and assessed against those responsible for razing the dedicated structure provided it was not restored within a reasonable time fixed by the court. Appellee Bradley has used the materials from the building in this case for construction of a barn which would make restoration impracticable. Since this is true, the trial court should appoint interested and responsible citizens to act as trustees for the use and benefit of the citizens of the Williams community who shall be entitled to possession of the lands involved so long as same may be used for the purposes for which it was dedicated. Such trustees shall further be entitled to damages for destruction of the building, but we think the evidence on this point should be more fully developed.

The decree is accordingly reversed, and the cause remanded with directions to the trial court to appoint trustees to take charge of and hold the dedicated lands for the use and benefit of the people of the Williams

community, so long as the property may be used as a place of public worship and community. meetings; that such trustees be awarded damages against appellees for the destruction and removal of the building in such sum as a further development of the testimony may determine or as may be agreed to by the parties; and the trial court is authorized to prescribe reasonable regulations necessary to a proper administration by said trustees of the funds arising from the damages thus determined.