The Honorable Percy Malone State Senator 518 Clay Street Arkadelphia, AR 71923-6024
Dear Senator Malone:
I am writing in response to your request for an opinion concerning a program of routine inspection and maintenance of city streets in the City of Caddo Valley. You have provided copies of two ordinances, a development plan, and a land use map, and you have asked several questions that focus on the Mayor's ownership of a road that is shown on the land use map. You outline the facts as follows:
 On August 15, 2002, ordinance number 2002-2 was adopted after three readings at the same meeting. This ordinance authorizes to create a program of routine inspection and maintenance of City Streets. The problem arises out of the fact that Mayor Thompson presided over the meeting and voted for the ordinance that will allow for City improvement on his property. This property has not been condemned by the City of Caddo Valley and remains titled in Willard Thompson.
Against this backdrop, you have asked the following questions:
 We want to know if he can vote on an ordinance that will benefit him personally, if he can turn over his street that runs though his trailer park based upon the 1979 map without it being properly dedicated, and whether or not there are any other problems in the process which will allow him to use City funds to improve his private property. It is our concern that this might in fact be an illegal exaction.
RESPONSE
Your questions involve factual inquiries I am neither authorized nor equipped to undertake. I can generally opine that Ordinance 2002-2 is presumptively valid, and that the Mayor's vote may give rise to a conflict of interest challenge. I can address the relevant law surrounding the issue; but this law will have to be applied and interpreted with reference to the development of specific facts.
You have made several assumptions that are critical to your questions concerning the City's maintenance of streets within its corporate limits. You indicate that the street in question was not "properly dedicated" and that funds of the City of Caddo Valley will be used in this instance to "improve [the Mayor's] private property." These statements, if true, would likely decide the illegal exaction question because clearly, no government can use public resources for private purposes. See, e.g., Pogue v. Cooper, 284 Ark. 105, 679 S.W.2d 207
(1984). See also generally Ops. Att'y Gen. 2000-222 and 99-202 (noting that a dedication of a street to and an acceptance of the street by the city are necessary conditions for the provision of city services).
According to Ordinance 2002-2, however, the City of Caddo Valley has accepted all streets shown on the land use map, including the street in question. Although you have suggested that there was no dedication, this ordinance indicates that the street was in fact dedicated; and the ordinance is presumed valid. A challenger will have the burden of establishing that it is arbitrary or unreasonable or outside the City's powers. See generally City of Fort Smith v. Van Zandt, 197 Ark. 91,122 S.W.2d 187 (1938). Assuming, therefore, the fact of dedication and acceptance of the street, then an easement will have been granted to the public and the fee will remain in the adjacent landowner (the Mayor).[1]See generally Arkansas State Highway Commission v. Sherry, 238 Ark. 127,381 S.W.2d 448 (1964). The City does not have to condemn the property in order to make improvements. Cf. Freeze, Mayor v. Jones Harvel,260 Ark. 193, 539 S.W.2d 425 (1976) (when a street is dedicated to the public, the governmental entity in which the street is located holds merely a right-of-way, and does not own the street). Accordingly, the fact that the property is titled in the Mayor does not prevent the City from obtaining a right-of-way easement and including the street in its maintenance program.
The Mayor's vote on Ordinance 2002-2 raises a separate question that ultimately requires a factual determination with respect to his personal interests under the particular circumstances. As a general principle of law, an officer would be disqualified from participating in a decision when he has a personal interest that might interfere with the unbiased discharge of his duty to the public. See Van Hovenberg v. Holman,201 Ark. 370, 144 S.W.2d 719 (1940); Op. Att'y Gen. 86-267. The VanHovenberg case dealt with a member of the city council who voted to grant a permit to an oil company to build and operate a filling station on a lot owned by said councilman. Previous requests for a permit made by other land owners on the same street to erect a filling station had been objected to by this councilman. Also, the councilman had secured a ten-year lease with an option to purchase the station in question from the oil company. In holding the councilman incompetent to vote, the Arkansas Supreme Court stated:
 It would be inconsistent if the law were that the collector of an improvement district, and a bridge district commissioner, could not profit through transactions with the districts, but an alderman could disregard the ordinances he has sworn to uphold by illegally constructing a filling station, and then consummate his plan to lease it by adding his vote to three others. . . .
201 Ark. at 375.
The furtherance of the officer's personal interest is the focal point of the unlawful conflict of interest theory. Van Hovenberg instructs that no member of a city council may vote on any question involving his own pecuniary interest, if that interest is immediate, particular, and distinct from the public interest. Accord Ops. Att'y Gen. 2000-302, 95-099, 90-160, 86-267. However, a member is not disqualified where his interest is only as a member of a class. Id. As stated in Attorney General Opinion 90-160:
 If the primary benefit of the [Advertising and Promotion] Commission member's action flows to another with no distinct pecuniary interest to the member, it may reasonably be concluded that the member need not disqualify from voting on the matter. If, however, the contract gives rise to a pecuniary interest of a Commissioner that is distinct from the public interest, a prohibited conflict of interest may result.
The wrong to be avoided is the placing of self-interest above public duty. Whether a wrong of this nature has occurred under the particular circumstances is entirely a question of fact and can only be established by the presentation of factual evidence showing both the motivation and the effect of the Mayor's vote in this instance. The inquiry would likely focus on the precise nature of the Mayor's interest as an adjacent landowner, and specifically whether that interest is sufficiently distinct from that of the others on the street so as to demand his abstention from voting on Ordinance 2002-2. If he should have abstained, then the ordinance will likely be subject to challenge. See A.C.A. §14-43-501(b) (mayor has a vote when his vote is needed to pass an ordinance).
Finally, reference should also be made to the code of ethics and conflict of interest provisions in the Arkansas Code that apply to public officials and state employees. In this regard, A.C.A. § 21-8-304(a) (Supp. 2001) provides the following:
 No public official or state employee shall use his position to secure special privileges or exemption for himself, his spouse, child, parents, or other persons standing in the first degree of relationship, or for those with whom he has a substantial financial relationship, that is not available to others, except as may be otherwise provided by law.
This provision codifies certain aspects of the common law conflict of interest principle. As with the common law rule, evaluating the situation under this Code section requires a factual determination. Enforcement authority is vested in the prosecuting attorney. See A.C.A. § 21-8-303.
In conclusion, the questions that have been raised require application of the relevant law to the particular facts at hand. While I am unable to definitively address the matter, the foregoing will hopefully provide general guidance in addressing the surrounding issues.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:EAW/cyh
[1] "Dedication" of a street to public use can be accomplished by various methods other than a deed or other formal dedication. See, e.g.,Poskey v. Bradley, 209 Ark. 93, 189 S.W.2d 806 (1945) (by parole dedication); Porter v. Stuttgart, 135 Ark. 48 (1918) (by implied dedication); Ayers v. State, 59 Ark. 26 (1894) (by prescription).