## HOLLY GROVE *v.* SMITH.

### Opinion delivered October 17, 1896.

STREET—DEDICATION.—To constitute a dedication of a highway, there must be a present intent to appropriate the land to public use; and if the intent of the owner is absent, there is no dedication. Thus, the dedication of streets and alleys across a tract of land in a town is not established merely by proof of the making and recording of a map showing the streets and alleys, where the land remained enclosed and cultivated by the owners.

Appeal from Monroe Circuit Court in Chancery.

JAMES S. THOMAS, Judge.

*H. A. & J. R. Parker*, for appellant.

There was a dedication by plaintiffs of the streets and alleys to the public. The filing and recording of the plat or map, and selling lots, paying taxes, etc., with reference to same, is a common law dedication.

42 Ark. 66; 58 *id.* 143, 494; 2 Dill. Mun. Corp. (3 Ed.) sec. 640; 23 N. E. 602; 9 So. 584; Elliott on Streets, ch. 4, p. 85 to 134; 22 Pac. 1057; 22 *id.* 615; 44 N. W. 677; 5 S. W. 350; 6 N. E. 866; 12 Ill. 29; 6 Atl. 633; 69 Am. Dec. 489; 8 N. E, 81; 7 N.W. 116; 13 Pac. 405; 19 S.W. 735; 23 Atl. 1128; 14 S. E. 130; Beach, Pub. Corp., secs. 1450, 1456; Elliott, Streets, 14 and 15; 9 So. 584.

*M. J. Manning*, for appellee.

There never was a dedication to the public by bill of assurances, or otherwise. It is essential that the donor should *intend* to set apart the land for the *use* of the *public*, and there can be no dedication unless there is *present intent* to appropriate the land to the *public*. Elliott, Roads & Streets, 92; 2 Dill. Mun. Corp. sec. 636 and note; 45 Md. 524; 110 Ind. 513; 103 *id.* 349; 21 N. Y. 477; 13 Pac. 141. To constitute a valid dedication, there must be an *intention* to dedicate, an *animus dedicandi*. 2 N. E. 803; 76 Ind. 245; 78 *id.* 90; 56 Md. 187; 42 Cal. 541; 88 Ill. 208; 34 Iowa, 144; 61 N. Y. 448; 23 Minn. 271; Angell on Highways, sec. 142; 30 Fed. 734. There must be an abandonment of the use *exclusively* to the public by the owner of the soil. 9 How. 10. Mere surveying streets and platting the land are not sufficient. 9 How. 31; 7 *id.* 196; 1 Md. 21 N. Y. 477. See also, 13 Pac. 143–4.

BATTLE, J. John M. Smith, being the owner of a certain tract containing thirty acres of land, agreed with Stephen W. Dorsey and James E. Gregg that it should be laid off into lots, with the necessary streets and alleys, and divided between him and them, so that he would get every alternate lot, and they, the others. In consideration of which they agreed that the Arkansas Central Railroad Company, which owned and operated a railroad on or near the land, should construct and

maintain a side-track and depot building,—the side-track on or opposite, and the depot building on, the land. It was further agreed that he should remain in possession of the land until the lots were sold or otherwise needed for use by them, and that it might be cultivated by him without charge. The agreement was reduced to writing, dated the 4th day of November, 1872, and signed by the parties. Smith died, and thereafter his representatives and Dorsey and Gregg caused the land to be laid off into lots, streets and alleys, pursuant to the agreement, a map of which was filed by some one in the proper recorder's office (by whom is not shown), and was recorded. A. H. Johnson, becoming president of the railroad company, succeeded to the rights of Dorsey and Gregg under the contract. The widow and heirs of Smith conveyed to him the alternate lots to which his predecessors, Dorsey and Gregg, were entitled; he agreeing in writing that they should remain in possession of and cultivate the lots so conveyed, until they were sold, and not to sell any of them without first consulting the widow. Mrs. Smith, the widow, afterwards purchased from Johnson the lots so conveyed. By some means not shown by the record in this court, J. M. Smith, Jr., and Mrs. Laura Peters, two of the heirs of John M. Smith, deceased, acquired nine acres of the thirty acres so laid off as before stated; and they recognized in many ways the division of the nine acres in lots, streets and alleys, paid taxes on it by lots according to the division, and sold other lots of the thirty acres, which belonged to them, as they are described on the map made of the same as laid off pursuant to said contract.

Mrs. Smith and the heirs of John M. Smith, deceased, remained in possession of the thirty acres, after it was divided into lots, according to the agreement with Dorsey and Gregg, and withdrew their inclosures of the

lots as they sold. As they sold lots, the fences were moved back, and the streets and alleys were opened only as far as the sale extended. No part of the nine acres has been sold, and the whole of it, including streets and alleys, have been inclosed at all times since it was divi-- ded. J. M. Smith, Jr., and Mrs. Peters, and those under whom they claim, had been in the adverse possession of it about twenty-three years at the commencement of this action.

On the 18th of January, 1894, the town council of Holly Grove unanimously passed a resolution requesting all persons having fences or obstructions in the streets and alleys laid off on the nine acres to remove the same in ten days after they were notified to do so, and ordering that the town marshal, by the direction of the mayor, execute the request, in the event the resolution was not obeyed. The notice was given. Thereupon J. M. Smith, Jr., and Mrs. Peters instituted this action to restrain the town of Holly Grove and its marshal from enforcing the resolution. The defendants answered, relying upon, and proving, among other things, the contract of John M. Smith, deceased, with Dorsey and Gregg; and the circuit court, by final decree, enjoined and restrained them from opening the streets and alleys so laid off on the nine acres.

The correctness of this decree depends on the decision of only one question, and that is, was there an intent to dedicate the land which the town council undertook to open for streets and alleys? To constitute a dedication, there must be a present intent to appropriate the land to public use. If the intent of the owner is absent, then there is no dedication. *Hall* v. *Mayor of Baltimore*, 56 Md. 187; *Bidinger* v. *Bishop*, 76 Ind. 244; *Irwin* v. *Dixion*, 9 How. (U. S.) 10; *Remington* v. *Millerd*, 1 R. I. 93.

The intent to dedicate may be shown by the open and visible acts of the owner. If they be such as fairly and reasonably lead an ordinarily prudent man to infer an intent to dedicate, and the public and individuals so construe and act upon them, and in good faith accept and use the land so held out as appropriated to public use, the owner will not be permitted to retake the land, and prevent the public from using it, by asserting there was no actual intent to dedicate, although there might have been a secret intent to prevent a dedication always present in his mind. He is estopped by his own conduct.

The evidence must show the intent clearly and satisfactorily, before the owner can be deprived of his land. "Merely laying out grounds, or merely platting and surveying them, without actually throwing them open to use or actually selling lots with reference to the plat, will not, as a general rule," show a dedication. Elliott, Roads and Streets, p. 130; *United States* v. *Chicago*, 7 How. 185; *Vanatta* v. *Jones*, 42 N. J. L. 561.

In the case at bar the contract under which the streets and alleys were laid off and surveyed shows that there was no immediate intent to dedicate. It was expressly agreed that John M. Smith should remain in possession of the land until the lots should be sold, or otherwise needed for use, by Dorsey and Gregg, and cultivate it free of charge. When the land was divided into lots, streets and alleys, it remained inclosed, and the streets and alleys were gradually opened to public use as lots were sold. For about twenty years immediately after this division, the owners denied the public the right to use the streets and alleys, except on condition that the lots which the streets were intended to make accessible were sold, and then only so much of the streets and alleys as made the lots sold accessible were opened, before there was any attempt in behalf of the public to accept them as a dedication. In all that time

no part of the nine acres was opened to public use. The evidence clearly shows that there was no intent to allow the public to use the streets inclosed, and that it was not entitled to the use of them, except on the conditions stated.

Decree affirmed.