JENNINGS *v.* RUSSELL.

4-7704                                                     189 S. W. 2d 656

Opinion delivered October 8, 1945.

72

*Virgil D. Willis*, for appellant.

*Nat T. Dyer*, for appellee.

McFADDIN, J. From an unsuccessful attempt to secure a chancery decree to open a so-called "street," appellant brings this appeal.

The Federal Government constructed the Norfork Dam on the Big North Fork of White River, in sections 2 and 11 in township 18 north, range 12 west, in Baxter county, Arkansas. During or after the construction, some promoters planned to, build a new town to be located in section 12 about a mile southeast of the dam site. Appellee, Ben McClellan, owned several hundred acres of land in section 12 and adjoining sections; and his holdings included the eighty acres described as the west half of the southwest quarter of section 12 (hereinafter referred to as the "townsite"), and also the forty acres adjoining, and being the southeast quarter of the southwest quarter of section 12 (and being referred to hereinafter as "the first addition"). These promoters were C. E. Murphy and Fred Henley, and in June, 1940, they secured from McClellan an option contract on the 120 acres for $100 cash and $4,900 to be paid within a

stated time. The promoters had the "townsite" for the proposed new town platted into lots and blocks by a surveyor on October 28, 1940. Murphy and Henley signed on the corner of the plat an attempted dedication of the streets and alleys shown on the plat; but there were several defects on the face of this plat, to-wit:

(1) There was nothing on the plat to indicate the definite location of the "townsite" except that it was "part of section 12, township 18 north, range 12 west." There was nothing on the plat to show any compass direction, or any known corner or monument as a beginning point to tie the plat to the physical surroundings; and (2) the promoters did not own the land; and in the facts in this case the attempted dedication was no better than their title. Appellant's claim that there was a dedication of the streets and alleys, insofar as McClellan is concerned, is based on estoppel, as we will subsequently elucidate.

Some time after the platting of the "townsite" the promoters added "the first addition," being the forty acres described as the southeast quarter, southwest quarter, section 12. There was no language on the plat of the first addition even attempting a dedication of streets or alleys. Before the first addition was platted, the promoters sold to the appellant some of the property in the "townsite," and also some in the "first addition": being lots 1, 2, and 3 in block 4 of the "townsite" (each lot being 25x125 feet), and being blocks 19 and 20 in the "first addition." These blocks in the "first addition" had not been platted, but their physical location was verbally pointed out.

The appellant paid $1,100 for the property that he purchased, and the promoters paid the money to McClellan, who made a deed to the appellant under date of December 23, 1940, in which the following is the description:

"Lots Nos. 1, 2 and 3 in block 4, and all of Blocks Nos. 24 and 25 in the Townsite of Jordan, Arkansas, as shown by plat to be filed and recorded. Said lots to be

not less than 25 feet wide and 120 feet long, and said blocks to contain in excess of one acre each.''

It will be observed:

(1) That blocks 19 and 20 in the ''first addition'' were erroneously described in the deed as being blocks 24 and 25 in the ''townsite''; and (2) the plat was not recorded at the time of the deed. In fact, no plat was ever recorded, because the entire project was abandoned, as we will explain hereinafter.

According to the unrecorded plat of the ''first addition,'' the following appear:

(1) Block 20 fronted on what is ,designated on the plat as ''Main Street,'' but which was merely the Norfork Dam public road already in use and independent of the townsite project. This block 20 was an irregularly shaped plot lying on the south side of the said public road. The block was 353 feet on the east side, 200 feet on the south side, 260 feet on the west side, and curved on the north side with the contour of the public road.

(2) On the entire east side of block 20 there was a roadway 20 feet wide.

(3) On the entire west side of block 20 there was shown ''Jennings Avenue'' as sixty feet wide.

(4) Just west of ''Jennings Avenue'' was block 19, being 220 feet north and south and 200 feet east and west; lying south of and fronting on the public road designated as ''Main Street.''

(5) Immediately west of block 19 (and with no intervening alley) was block 18, which was also 224x200 feet, just as was block 19.

(6) Immediately west of block 18 was ''Baxter Avenue,'' 60 feet wide and extending south from the public road.

(7) Extending east and west all along south of said blocks 20, 19, and 18 was ''Elm Street,'' shown as 60 feet wide.

(8) North of the public road (designated on the plat as "Main Street") were blocks 1 to 9 of the "first addition," with several streets and alleys.

As before stated, appellant paid $1,100 and received his deed on December 23, 1940, and began improving the property that should have been described as blocks 19 and 20 of the "first addition" to the "townsite." At the time appellant (plaintiff below) received said deed, no streets or alleys had ever been opened in the "townsite" or the "first addition," with the exception of "Main Street," which had all the time been a public road as aforesaid. The land on which was located the "townsite" and the "first addition" was used as pasture land, hill land, and orchard land; and the cross fences ran in entire disregard of the streets shown on the plat. There was a fence across "Elm Street." Large trees grew on the "streets." Lots 1 to 4 of the "townsite" were several hundred feet northwest of block 18, and on up the public road towards Norfork Dam, and in no wise contiguous to blocks 18 and 19 of the first addition.

The promoters were unable to pay the balance to McClellan on the option, and lost all their rights shortly after appellant received his deed. The entire project of building a town was abandoned. In short, the town was "prospective" at best, and appellant seems to have been the only person to have purchased any property as lots and blocks under the plat. McClellan had some sort of successful litigation with the promoters and had their rights cancelled; but the exact nature of that litigation is not before us.

At all events, by April 22, 1942, the whole concept of a town and addition appears to have been abandoned: for on that date McClellan conveyed to the appellant approximately 40 acres that had been in the original "townsite," and also about nine acres that had been in the "first addition" (being all of the "first addition" north of the public road); and the descriptions in the deed of April 22, 1942, ignored all references to streets or alleys or lots or blocks. In the same deed—and at

appellant's request—McClellan described by metes and bounds what had been blocks 19 and 20 in the "first addition," and also included what had been a 20-foot roadway on the east side of block 20, and also included a strip 20 feet wide of what had been "Elm Street" south of blocks 19 and 20. Thus, appellant received some 49 or more acres out of what had been parts of the "townsite" and "addition," and received a correct description by metes and bounds of the blocks 19 and 20 erroneously described in the former deed of December 23, 1940, and received a portion of what had been "Elm Street."

Later appellee, Charles Russell, purchased from McClellan an acre of ground lying southwest of, and adjoining, what would have been block 19 of the "first addition" if the promotional project had materialized. Before Russell made his purchase he asked appellant to point out on the ground appellant's west line; and appellant did this. Then Russell purchased the acre, and erected a barn and house, all with the appellant's knowledge. Eighteen months later appellant filed this suit against appellees McClellan and Russell, alleging that Russell's barn was in "Elm Street" according to the plat, and that "Elm Street" should be opened and the barn removed. In the alternative, appellant asked damages against McClellan for selling "Elm Street" to Russell and thereby damaging appellant's property. The Chancery Court dismissed the appellant's complaint as without equity, and this appeal challenges that decree.

The basis of appellant's claim is that there was a dedication of the streets and alleys by McClellan, and that no subsequent act could destroy or defeat that dedication. Appellant says: "When the owner of land makes a plat thereof, or adopts one made by another person, and sells lots by reference to the plat, this constitutes a dedication of the streets and alleys shown thereon." And appellant cites the following cases to sustain the statement: *Town of Hope* v. *Shiver,* 77 Ark. 177, 90 S. W. 1003; *Davies* v. *Epstein,* 77 Ark. 221, 92 S. W. 19; *Brewer* v. *Pine Bluff,* 80 Ark. 489, 97 S. W. 1034;

*Stuttgart* v. *John,* 85 Ark. 520, 109 S. W. 541. These cases hold what the appellant says; and we affirm the rule stated in each of these cases. But the facts in the case at bar differ from the facts in these reported cases so greatly that these cases afford no comfort to the appellant or guide to the court in the case at bar.

I. *The Promotional Scheme Was Abandoned.* We have here a case where an entirely promotional scheme was abandoned by the promoters, the landowner, and the purchaser (appellant); and appellant is the only party shown by this record to have made any purchase under the promotional scheme. The "streets" and "alleys" shown on the plat were never in fact opened, and there was a fence and also many trees all the time blocking what the appellant now claims was "Elm Street." The case at bar has facts similar to the facts in the cases of *Holly Grove* v. *Smith,* 63 Ark. 5, 37 S. W. 956, and *Dickinson* v. *Arkansas City Improvement Co.,* 77 Ark. 570, 92 S. W. 21, 113 Am. St. Rep. 170. In *Holly Grove* v. *Smith,* a landowner made a contract with certain promoters whereby designated land of the former was to be laid off in lots and blocks and streets and alleys; and the promoters were to receive certain of the lots. A plat was made and placed on record, but the landowner re-mained in possession of nine acres of the property and continued to farm and cultivate the same. The promotional scheme failed of realization and was abandoned. Eventually a dispute arose wherein it was claimed that the fences should be removed from the nine acres of farm land, and the streets opened as shown on the plat. This court denied the claim. While the reason for the holding was given as the lapse of years between the original contract and the assertion of the claim of dedication, nevertheless, it is evident from a study of the case that the abandonment of the promotional scheme and complete failure to have the streets opened were matters considered as evidence that there had never been a dedication in fact, even though streets had been shown on the plat.

In *Dickinson* v. *Arkansas City Improvement Company* there was a promotional scheme which failed of

realization; and in refusing to allow the streets to be opened, this court said:

"It follows that, the dedication never having been in any way accepted by the public, and having been revoked by abandonment of the scheme for converting the lands into additions to the adjacent town, the title to the streets, avenues and alleys passed to the owners of abutting platted lots and blocks as grantees of the original dedicators. That is to say, they own to the center of the platted streets, etc., and of course where they own the lots on both sides it carries the title to the whole street."

While the facts in the case at bar are not identical with the facts in either or both of the reported cases just discussed, nevertheless, we believe the result in each of these cases affords considerable support for the decree of the Chancery Court in the case at bar.

II. *The Appellant Is Estopped to Claim a Dedication.* There is, however, another cogent reason why the appellant cannot prevail, and that is the application of the rule of estoppel against estoppel, which is stated in 19 Am. Juris. 810, as follows:

"Moreover, one party to a transaction may be denied the right to assert an estoppel against the other party by reason of certain facts which create an estoppel against himself. The doctrine applied in this situation is characterized as one of counter estoppel or estoppel against estoppel. The effects of such doctrine are that two estoppels may destroy each other or, as otherwise expressed, one estoppel may set another at large, . . ."

And in 31 C. J. S., Estoppel, § 12, p. 196, the rule is stated:

"An estoppel against an estoppel sets the matter at large; so, the setting up of an estoppel by deed may be prevented or offset by another such estoppel, or a different form of estoppel, against the party seeking to set it up."

Here the appellant, in filing his suit and seeking the affirmative aid of a court of equity, claimed that McClel-

lan, by making the deed of December 23, 1940, recognized the plat and dedicated the streets shown on the plat. This was a plea of estoppel by the appellant against McClellan, because, as stated in 26 C. J. S., Dedication, § 23, p. 78:

"Where an owner makes a sale of land with reference to a map or plat, in the absence of a manifestation of a contrary intention, he thereby manifests an intention to dedicate the streets and alleys shown thereon to the public use.

\*　\*　\*　\*

"The reason for the rule is that the grantor, by making such a conveyance of his property, induces the purchaser to believe that the streets and alleys will be kept open for their use and benefit, which use includes the right in the purchasers that all persons whatsoever as occasion may require or invite may so use the streets; and having acted on the faith of the grantor's implied representations based on his conduct, he is equitably estopped as well in reference to the public as to his grantees from denying the existence of the easement, and from appropriating the land so dedicated to a use inconsistent with that represented by the map on the faith of which the lots are sold."

To sustain the text above quoted, there is cited in Corpus Juris Secundum our own case of *Porter* v. *City of Stuttgart,* 135 Ark. 48, 204 S. W. 607, where we said:

". . . dedication may be implied as well as expressed, and one may estop himself to deny that there has been a dedication, . . ."

In *Holly Grove* v. *Smith, supra,* Mr. Justice BATTLE, in discussing the reason why a landowner might be held to have dedicated streets by reference to a plat, said:

"He is estopped by his conduct."

In 16 Am. Juris. 368 it is stated that the theory of dedication from a plat and the sale of lots with reference thereto is sometimes based upon estoppel. Thus, the appellant's case for dedication was predicated on the

theory that McClellan was estopped to deny the dedication.

But, in seeking to affirmatively assert an estoppel against McClellan, the appellant (plaintiff below) is met by his own acts which estop him from making such a claim against McClellan. Here are some of the things that the record shows that the plaintiff did:

(1) In April, 1942, he demanded and accepted a deed from McClellan to 20 feet of what was "Elm Street" on the plat, and now has that strip under fence, while seeking to have the same street opened west of his fence line.

(2) The appellant purchased about 49 acres out of what had been a part of the "townsite" and "addition," and he entirely ignored the plat in that purchase.

(3) The appellant pointed out to Russell the southwest corner of appellant's land, and at that time said nothing about "Elm Street" being open, and sat silently by for 18 months, and allowed Russell to build his barn in what the appellant is now claiming should be opened as "Elm Street." By these acts together, and by others shown in the record, appellant has estopped himself to claim an estoppel against McClellan. This is a private suit, and the rights of the public to claim dedication are not involved; and appellant is estopped to claim an estoppel.

The decree of the chancery court is in all things affirmed.