BROWN *v.* LAND, INC.

5-2832                                    364 S. W. 2d 659

Opinion delivered January 28, 1963.

[Rehearing denied March 4, 1963.]

*Moses, McClellan, Arnold, Owen & McDermott,* by, *Wayne W. Owen,* for appellant.

*Wright, Lindsey, Jennings, Lester & Shults,* for appellee.

GEORGE ROSE SMITH, Associate Justice. The appellant Brown and the appellee Land, Inc., were the proprietors of adjoining residential subdivisions in suburban Little Rock. This is a suit by Land to enjoin Brown from committing repeated trespasses upon two very narrow strips of ground that Land claims to have reserved as unplatted buffer zones between the two additions. The chancellor issued a preliminary injunction, but upon final hearing that order was dissolved and the plaintiff Land was denied any relief. Brown became the appellant by first lodging the record in this court, but the main questions are presented by Land's cross appeal, which we discuss first.

In 1958, before any of the property was platted, Brown owned a tract that was bordered on the north and on the west by an L-shaped parcel owned by Land. On September 3, 1958, Land recorded a plat of what we will refer to as Briarwood Addition No. 1, lying immediately north of Brown's property. Later on Land dedicated what we will refer to as Briarwood Addition No. 2, lying immediately west of Brown's property. In both cases the original plat proved to be defective, and in both cases Land subsequently filed an amended and substituted plat in which an attempt was made to reserve a narrow strip along the common boundary with Brown. The two phases of Briarwood Addition involve wholly distinct issues and must be considered separately.

The original plat of Briarwood Addition No. 1 showed a street, 25 feet in width, named Princess Drive, that lay along the southern edge of the addition and abutted Brown's property to the south. A municipal regulation requires that a dedicated street be at least 50 feet wide. What Land actually intended, without so stating, was to dedicate a half street, in the expectation that Brown would contribute the other half.

Brown, however, refused to donate the other half of the street, and, in fact, it developed that he had acquired title by adverse possession to part of the 25-foot strip platted by Land as Princess Drive. To meet this difficulty Land filed a revised plat of Briarwood No. 1, in

which Princess Drive was moved northward 25 feet, leaving an unplatted strip between the south edge of this street and Brown's northern property line, as established by adverse possession.

When Brown later platted his own tract as Cardinal Heights Addition and began using Princess Drive as a means of access in the development of his property, Land brought this suit for an injunction. Land contends that it effectively canceled its original dedication of Princess Drive and that therefore Brown commits a trespass whenever he crosses the buffer strip that Land reserved in its revised plat.

We think the chancellor was right in holding that the first dedication was still in force, so that Brown was entitled to use Princess Drive as a public thoroughfare. It is conceded that Land sold a number of lots in Briarwood No. 1 between the filing of the original plat and the filing of the amended plat. Thus at the outset Land is confronted with our long-established rule that when the owner of land plats it into lots and blocks and sells lots by reference to the plat, he is held to have dedicated the streets to public use, "and such dedication is irrevocable." *Mebane v. City of Wynne,* 127 Ark. 364, 192 S. W. 221.

In seeking to escape the effect of this settled principle Land argues that its initial dedication of Princess Drive was merely conditional, since the width of only 25 feet did not conform to the city's minimum requirement. Nevertheless, the city approved the original plat, and there was nothing to put innocent purchasers of lots within the addition on notice that the dedication of Princess Drive was subject to retraction. Apparently the 50-foot minimum requirement is not rigidly adhered to by the city, for it seems to have approved the revised plat also, even though it purported to dedicate only a 25-foot right of way for Princess Drive. The appellee cites *Love v. Hicks,* 214 Ark. 229, 215 S. W. 2d 138, as authority for its contention that the dedication of a half street is revocable, but in that case the 20-foot strip in dispute

was not shown by the plat to be a street, as is the case here.

It is also argued that the original bill of assurances for Briarwood No. 1 reserved to a majority of the land-owners within the addition the power to set aside any provision in the dedication. Hence, it is argued, the revised plat was a valid exercise of this reserved power and effectively superseded the first attempted dedication of Princess Drive.

We need not determine whether it would be possible for the proprietor of an addition to reserve the power to do away with the streets within the area after he had sold lots by reference to the plat, for in this instance the language of the bill of assurances is not so unmistakable as it would have to be to achieve that result. This is the pertinent sentence in the bill of assurances: ''Any and all of the covenants, provisions or restrictions set forth in this Bill of Assurances may be amended, modified, ex-tended, changed, or cancelled, in whole or in part, by a written instrument signed and acknowledged by the owner or owners of over fifty per cent (50%) in area of land in this Subdivision . . . ''

It will be seen that the power is reserved to change or cancel any ''covenants, provisions or restrictions'' in the bill of assurances. It seems plain that the reserved power was intended to apply to such matters as the restriction of the land to residential use, limitations upon the size and location of structures within the addition, minimum requirements for the area and width of lots, a prohibition against the keeping of animals or poultry, and many other similar covenants and restrictions that are set forth in the bill of assurances. By contrast, the location of the streets is shown by the plat rather than by the bill of assurances and does not fall within the general scope of a covenant, provision, or restriction. We think it clear that in order for the dedicator to reserve such a far-reaching and drastic power as that of vacating a street, perhaps even after homes have been built in re-liance upon its existence, the intention should be ex-

pressed so clearly as to leave no room for doubt. Since that degree of clarity is wanting here, we conclude that Land did not retain the authority to set aside its dedication of Princess Drive. With respect to this phase of the cross appeal the decree is affirmed.

The first plat of Briarwood Addition No. 2 portrayed the subdivision as being bounded on the east by the Brown tract, as defined by the original Government survey. It was found, however, that Brown had maintained an encroaching fence along this boundary for many years and had acquired title by adverse possession to part of Land's property.

To meet this difficulty Land decided to replat Briarwood No. 2 and to that end directed its engineers to survey a line that would lie slightly west of Brown's fence, so that there would be no question about Land's title. Land's engineers testified positively that these instructions were obeyed, that while the fence was still standing they surveyed a line lying slightly west of the fence and revised the dimensions of the abutting lots to leave an unplatted buffer strip between the fence line and the eastern boundary of the lots. A new plat of Briarwood No. 2, conforming to this survey, was filed.

Thereafter Brown, in the course of developing his Cardinal Heights Addition, sought an outlet for his main sewer line. To this end he bought Lot 224 of Briarwood No. 2, which was one of the eastern tier of lots in that addition, and ran his sewer line from Cardinal Heights across Lot 224 to a sewer main that Land had placed in the street immediately west of Lot 224. In its complaint in the case at bar Land sought to require Brown to remove the sewer line from the unplatted strip that separated Lot 224 from what had become Cardinal Heights. In defending the case Brown contended, and the chancellor found, that Land's engineers, in resurveying the property, had failed to leave any space between Lot 224 and the fence line. Hence there was no trespass, and the request for a mandatory injunction was denied.

We think the weight of the evidence to be against the chancellor's conclusion. By far the most convincing

testimony is that of Land's engineers, who alone surveyed the line while the fence still existed. Brown's witnesses did not attempt to determine the location of the fence until after it had been removed. Their efforts to reconstruct the position of a line that admittedly was not straight are not persuasive. Indeed, the testimony of Brown's principal witness, Powers, is actually favorable to Land, indicating that Lot 224 lies about two feet west of the fence line. Even such a narrow strip is sufficient to support Land's prayer for relief, as the rule of *de minimis* does not apply to controversies involving the ownership of real property. *Leffingwell* v. *Glendenning*, 218 Ark. 767, 238 S. W. 2d 942. Upon this phase of the cross appeal the decree must be reversed and the cause remanded for the entry of a mandatory injunction.

By the direct appeal Brown contends that the chancellor erred in failing to award him damages for Land's wrongful procurement of the temporary injunction (with respect to the alleged trespasses in Briarwood No. 1). There is, however, no proof by which these damages can be determined in dollars and cents, and the chancellor's action in charging the costs against Land was in effect an award of nominal damages to Brown. *Reader Railroad* v. *Green*, 228 Ark. 4. 305 S. W. 2d 327. The decree is therefore affirmed upon the direct appeal, with the appellee to recover its costs in this court only.