JAMES COMPANY, INC. *v.* CHARLES SHEPPARD, JR.
ET AL

5-5275                                                 458 S. W. 2d 752

Opinion delivered October 5, 1970
[Rehearing denied November 9, 1970.]

*Smith, Williams, Friday & Bowen,* for appellant.

*Laws & Schultze,* for appellees.

J. FRED JONES, Justice. This is an appeal by James Company, Inc. from a decree of the Pope County Chancery Court canceling a deed from the City of Russellville to James Company, Inc. because of failure to comply with statutory notice because of inadequate consideration.

The background facts are these: In 1926, upon application of the Russellville Lions Club, William E. Harmon and Katherine Harmon of New York, purchased real property in Russellville and for the recited consideration of One Dollar, they donated the property to the City of Russellville by warranty deed, granting and releasing the property to the City of Russellville,

its successors and assigns forever, with the following provisions:

"THIS CONVEYANCE is made, however, subject to the following conditions to all singular of which the Grantee herein, for its successors and assigns, by the acceptance of this deed, assents and agrees to be bound thereby, and which conditions are to run with the land herein conveyed, viz:

That the property shall be used in perpetuity for playground and recreational purposes.

That no building shall be erected on the property except for the furtherance of desirable play and recreation.

That the premises shall always be known as Harmon Field.

That the land shall be open to all persons except that with written consent of the Harmon Foundation reasonable racial restrictions may be imposed.

That the land shall be open without charge to all except that under reasonable regulations admission may be charged for amateur contests or for activities the proceeds of which are devoted to the betterment of the property or to recreation.

That the premises hereby conveyed shall always be kept in a proper condition for recreational activities and be given proper police protection.

That upon material breach of any of these conditions the property shall revert to the grantor, William E. Harmon, his heirs and assigns."

There is ample evidence that the property has been used for park, playground and recreational purposes by the citizens of Russellville since its acquisition and there is no evidence to the contrary except, one or two

years when a part of it was planted in corn and a vegetable garden by two separate adjacent property owners. On May 22, 1968, at a call meeting of the Russellville City Council, resolution No. 209 was adopted and the minutes pertaining thereto recite as follows:

"Attorney Young proposed Resolution No. 209. This resolution is to exchange 1.7 acres (by Quick Claim Deed) [sic] in Harmon Park for a warranty deed to 2 acres across the road from the new 12th Street School, the acreage to be used for a park.

Motion by Hill, second by Faulkner, that we adopt Resolution *No. 209* as read. Motion passed."

Resolution No. 209 is as follows:

"WHEREAS, there is a shopping center to be built adjacent to a part of the Harmon Playground area, and

WHEREAS, because of the parking situation and the proximity of the shopping center to said portion of Harmon Playground, and

WHEREAS. said shopping center owner, realizing that the City of Russellville does not have fee simple title to said property, has offered to exchange properties, giving a warranty deed to the City of Russellville in exchange for a quitclaim deed.

NOW, THEREFORE, BE IT RESOLVED by the City Council of the City of Russellville, Arkansas that the Mayor and City Clerk, upon receiving a warranty deed from James Company, Inc. to a two (2)-acre tract of land selected by Floyd Metts, Recreation and Parks Director, execute a special warranty deed to James Company, Inc. to the following lands:

Lots 2 and 11 and fractional Lots 1 and 12, Block 33, W. J. White's Addition to the City of Russell-

ville, and the fractional Block 45, Mary A. Russell's Addition to the City of Russellville,

the property being the west portion of the land known as Harmon Playground and lying West of North Jonesboro Avenue."

On the same day, May 22, 1968, under authority of this resolution, the City of Russellville, by its mayor and city clerk, executed a special warranty deed transferring the property to James Company, Inc. in consideration of the exchange of land by James Company, Inc., the receipt of which was acknowledged.

In July, 1968, the Russellville Lions Club adopted and filed with the city clerk a resolution pointing out that the Russellville Lions Club was instrumental in obtaining the gift of Harmon Field to the City of Russellville and owes a continuing duty to the Harmon Foundation; and after pointing out the reverter provision in the deed of conveyance, as well as the questionable value of the property given in exchange, the resolution then resolved that:

"(1) The Mayor and City Council of Russellville [be] urged to do everything in their power to rescind the above transaction and restore the full area of Harmon Field to the City of Russellville.

(2) The Mayor and City Council of Russellville be urged to invite Russellville Lions Club to send a committee to sit in on any future negotiations concerning Harmon Field."

On July 11, 1968, at a call meeting of the Russellville City Council the minutes recite as follows:

"Attorney Young read resolution of Russellville Lions Club which asks that the transfer of 1.7 acres of Harmon Playground be rescinded and said property be returned to the City for use as a park. Motion of Humphrey, second by Ford, that we

adopt resolution of the Lions Club and the request to rescind 1.7 acres of Harmon Playground that was transferred. Motion passed unanimously."

On February 3, 1969, the appellees, as citizens and taxpayers of Russellville, filed their petition in the Pope County Chancery Court alleging that the described premises, known as Harmon Field or Harmon Playground, have been used for various forms of recreation since the conveyance to the city; that it is the intention of the James Company, Inc. to construct either parking facilities or buildings upon the described premises for use in connection with the construction and operation of a shopping center, and that James Company, Inc. has commenced construction activities upon the lands by engaging in dirt moving and ditching operations. The petition then sets out and alleges that the special warranty deed was executed and delivered to James Company, Inc. by the City of Russellville without any authority to do so; that the purported conveyance constitutes a violation of the conditions of the conveyance from William E. Harmon and his wife, Katherine F. Harmon, to the City of Russellville and thus subjects, not only the lands purportedly conveyed to the James Company, Inc., but the remaining portion of Harmon Field to the reversionary rights set out in the deed from the Harmons to the City of Russellville. The petition then alleges that even if the City of Russellville had the authority to make such a conveyance, the attempted conveyance was invalid and void in this instance for the reasons: That no proper notice was given of the intention to make the proposed exchange, and, the consideration for which said lands were purportedly exchanged is grossly inadequate. Among other things, the petitioners prayed that the special warranty deed dated May 22, 1968, from the City of Russellville to James Company, Inc. be canceled, and in effect, prayed that the parties be placed back in status quo.

The chancellor found that the City of Russellville, in its conveyance of the described property to James Company, Inc., on May 22, 1968, failed to comply with

statutory requirements for such sale; and, that the City of Russellville, received an inadequate consideration for such conveyance; and, for these reasons, the conveyance of May 22, 1968, from the City of Russellville to James Company, Inc., should be canceled and set aside. The chancellor then decreed. as follows:

"1. That the Special Warranty Deed dated May 22, 1968, from CITY OF RUSSELLVILLE to JAMES COMPANY, INC., is hereby canceled and set aside and that title to the following described lands, to-wit:

Lots 2 and 11 and fractional Lots 1 and 12, Block 33, W. J. White's Addition to the City of Russellville, and the fractional Block 45, Mary A. Russell's Addition to the City of Russellville.

is hereby vested in the CITY OF RUSSELLVILLE;

2. That the Warranty Deed Dated May. 22, 1968, from JAMES COMPANY, INC., to CITY OF RUSSELLVILLE is hereby canceled and set aside and that title to the following described lands, to-wit:

Part of the NE¼ SW¼ of Section 8, Township 7 North, Range 20 West; commencing at the SE Corner of the NE¼ SW¼, run thence West 417.42 feet to the corner of the cemetery for point of beginning; thence North 417.42 feet; thence West 208.71 feet; thence South 417.42 feet; thence East 208.71 feet to point of beginning, being two acres is hereby vested in JAMES COMPANY, INC.;

3. That Defendant, JAMES COMPANY, INC., is hereby directed to restore the surface of the ground described in the Special Warranty Deed from CITY OF RUSSELLVILLE to JAMES COMPANY, INC., to JAMES COMPANY, INC., to its condition prior to said conveyance and remove any encumbrances;

4. That the Cross-Complaint of Defendant, JAMES

COMPANY, INC., against Defendant, CITY OF RUSSELLVILLE, for breach of warranty is hereby dismissed."

Considerable discussion in the briefs is directed to the nature of the estate created by the deed from the Harmons to the City of Russellville. The appellant suggests that it created either a fee simple in the City of Russellville, subject to a power of termination in William E. Harmon, or, that it created a fee simple determinable in the City of Russellville subject to a reversion in William E. Harmon. We find it unnecessary to extend our consideration beyond the ,points relied on by the appellant and in doing so, the nature of the estate becomes unimportant in this case. The points on which the appellant relies are as follows:

"The Court erred in applying Ark. Stat. Ann. § 14-701 to the case.

The Court erred in holding that there was an inadequacy of consideration."

We are of the opinion that the chancellor was correct on both points.

Ark. Stat. Ann. §§ 14-701 through 704 (Repl. 1968) read as follows:

"§ 14-701 Any general or local law to the contrary notwithstanding, the State or any municipal corporation, county or other political subdivision thereof, shall have authority to sell, lease, grant, exchange or otherwise dispose of any property or interest therein comprising parks, playgrounds, golf courses, swimming pools, or other property which has been dedicated to a public use for recreational or park purposes, or has been dedicated to a public use for recreational or park purposes by a private citizen, corporation, or association, and thereafter acquired by the State, county, city or other political subdivision thereof, without regard to whether said

public use has been previously abandoned, or that said property has become unsuitable or inadequate for the purpose for which originally dedicated, said disposition to be on such terms and conditions as may be deemed desirable or necessary. Provided, however, that any lease under this act [§§ 14-701—14-704] shall be for a period not to exceed twenty (20) years.

§ 14-702 Such sale, lease, grant or disposal shall be in the discretion of, and executed by:

(1) the Governor, as to State property;

(2) the county court as to county property;

(3) the mayor and council, city commissioners, or other governing authority, as to property of a municipal corporation.

§ 14-703 Any sale, lease, grant, exchange or other disposal of any property under the provisions of this act [§§ 14-701—14-704] shall be made only after advertising such in a newspaper in which legal advertisements are published for the county in which the land and/or other facilities to be disposed of lies, once a week for four [4] weeks. Such advertisements shall describe the property, shall state the manner of disposition to be made, shall specify the time, and place of such disposition, and shall state any other requirements stipulated by the disposing instrumentality of government, including an award to the highest responsible bidder, subject to the provisions herein contained. In the event the property to be sold shall lie in more than one [1] county, such advertisement shall be run once a week for four [4] weeks in the newspaper in which legal advertisements are published for all such counties. All sales and/or other dispositions made under the provisions of this act shall be made under the terms of the advertisement for cash sale, rental, or lease consideration. Provided, however,

that the selling or disposing authority shall have the right to reject all bids in the event the high bid shall prove unsatisfactory for any reason, and said property shall then be readvertised and disposed of under the provisions above set out. All State property required to be advertised under this bill shall also be advertised in two [2] additional newspapers of general circulation in this State.

§ 14-704 Nothing herein shall be construed as impairing the obligation of any contract provision, bond issue or other indebtedness thereon, whether by way of reversionary clause or otherwise."

Under the plain wording of the statute this sale or exchange could "be made only after advertising such in a newspaper in which legal advertisements are published for the county in which the land and/or other facilities to be disposed of lies, once a week for four [4] weeks." Even if the city had followed the procedure set out in the statute, it still would have been confronted by the protection accorded the Harmon reversionary interest under § 14-704, supra.

The uncontroverted facts are so clear and the statute so plain, the chancellor could scarcely have failed to render the decree that he did if §§ 14-701—704, supra, apply to the facts in this case; and we hold that they do. The chancellor simply held that the attempted conveyance was void for failure to comply with the Act, and in so holding, the chancellor was correct. No notice of any kind was given. The city attorney who presented the resolution authorizing the sale also represented the would-be purchaser, and the deed was dated on the same day the resolution was adopted. As a matter of fact, minutes of the council meeting indicate that the council did not authorize the execution of a special warranty deed at all, but only a quitclaim deed. The resolution itself while setting out that a quitclaim deed would be acceptable, authorized a special warranty deed. We do not imply that this procedure alone would have voided the conveyance. It does indicate haste in attempt-

ing to close the transaction, and it points up good
reason for § 14-703, supra.

The appellant seems to recognize the obvious fail-
ure of the City of Russellville to comply with the pro-
visions of § 14-701, supra. Indeed the appellant argues
that if the city had followed this statute, the city would
be violating the Constitution of the United States and
of Arkansas in taking or disposing of Harmon's re-
versionary interest without just compensation. The ap-
pellant cites Ark. Stat. Ann. § 19-3631 (Repl. 1968) as
the proper authority for the conveyance, and argues
that the attempted conveyance should be approved and
sustained under the provisions of that statute. Section
19-3631 comes from legislative Act 486 of 1965 and
authorizes the sale of property and the issuance and
sale of bonds in connection with the creation of parks
and playgrounds. This statute has to do with the
*acquisition* and not the *disposition* of public parks and
playgrounds. Act 486 is titled:

> "An Act Authorizing Municipalities to Develop
> and Provide Public Parks and Facilities; to Issue
> Revenue Bonds; Providing for the Payment of Said
> Bonds; and for Other Purposes."

The first section of this Act is digested as Ark.
Stat. Ann. § 19-3631 (Repl. 1968) under the heading
"General power to acquire, construct and maintain
recreational facilities," and reads as follows:

> "Any municipality in this State is hereby authorized
> to own, acquire, construct, reconstruct, extend,
> equip, improve, operate, maintain, sell, lease, con-
> tract concerning, or otherwise deal in or dispose of
> any land, buildings, improvements or facilities of
> any and every nature whatever necessary or desirable
> for the developing and providing of public parks
> and facilities within or near the municipality, in-
> cluding, without limitation, recreation areas, stadi-
> ums, auditoriums, arts and crafts centers, folklore
> centers, interpretative centers, camping areas, and

other facilities so as to provide for the recreation and cultural needs of its inhabitants and to stimulate and encourage the economic growth of the municipality and its inhabitants (with each such undertaking by a municipality hereunder sometimes referred to herein as a 'project')."

Section 17 of Act 486 may throw some light on the objects and intentions of the legislature in passing the Act, this section is as follows:

"It is hereby found and declared that municipalities in this State do not have adequate programs for the developing and providing of public parks and facilities and that on account of such inadequate programs the municipalities have been unable to provide its inhabitants with necessary park and other facilities and have not realized the benefits which will flow from the stimulated economic growth resulting from such adequate programs and that unless such programs are made available, municipalities and the inhabitants thereof will continue to be penalized. The above set forth conditions can be alleviated by the authority set forth in this Act. An emergency, therefore, is declared to exist and this Act being necessary for the preservation of the public peace, health and safety, shall take effect and be in force from and after its passage."

Section 1 of this Act simply, and in plain language, authorizes cities to sell land necessary or desirable for the developing and providing of public parks and facilities. It does not authorize the sale of public parks or playgrounds at all.

The appellant concludes its brief with the assertion "that the cities of Arkansas should have some authority to deal with those park properties in which they do not hold a fee simple absolute title." Perhaps the appellant is right in this assertion, but that is a matter which addresses itself to the legislature and not to this court.

As to appellant's second point, we are of the opinion that the chancellor's finding was not against the preponderance of the evidence. Jackson Ross qualified as an expert appraiser. He testified that the market value of Harmon playground is $25,575, and the market value of the land given in exchange is $6,000. Mr. A. R. Jordan qualified as an expert appraiser and testified that in his opinion the Harmon land was worth $11,875 on the basis of twenty-five cents per square foot. His opinion was based on a plat showing 47,500 square feet. He testified that his appraisal would be changed upward if the tract contained 51,000. Mr. Jordan made no attempt to appraise the property James Company attempted to exchange for a part of the Harmon playground. The evidence indicates that the playground is close to downtown Russellville and that the two acre tract offered in exchange is adjacent to a several acre playground near a new school building, and that no one resides near the property. In any event, the expert appraisal testimony most favorable to the appellant, places the value of the Harmon playground property almost twice the value of the property offered in exchange according to the only appraisal made of the property offered in exchange.

The decree is affirmed.