Joyce Davis HARVEY *v.* Rod BELL

87-12                                          732 S.W.2d 138

Supreme Court of Arkansas
Opinion delivered July 6, 1987

*Davis & Associates, P.A.*, by: *Charles E. Davis*, for appellant.

*Ball, Mourton & Adams, Ltd.*, by: *Stephen E. Adams*, for appellee.

TOM GLAZE, Justice. This case involves opposing parties who are real estate developers in Eureka Springs, and who are each developing subdivisions in close proximity of one another. Their conflict ensues from appellee's "hookup" to an existing sewer line located within a subdivision established by appellant. Appellant contends appellee's action constituted an intentional trespass and encroachment, which entitles appellant to punitive damages and a mandatory injunction, compelling removal of appellee's sewer connection and manhole from appellant's property. Appellee's primary response, contained in his cross-appeal, is that appellant's sewer line had been dedicated to the public and that appellee's sewer hookup was lawfully installed within that public easement.

At trial, the chancellor rejected the appellant's and appellee's contentions (offered again here on appeal) but instead, determined that appellee had performed the sewer construction mistakenly but in good faith, that appellant's request for removal of the sewer hookup would require a forfeiture and deny equity, and that appellant was entitled to no punitive damages but was entitled to a judgment in the sum of $1,000, representing the damage to the lot on which the construction took place. Because we find the law and evidence support appellee's argument that his sewer connection was constructed within a publicly-dedicated easement, we affirm the chancellor's decision, denying appellant's request for an injunction and punitive damages, but reverse

his award of compensatory damages to appellant.

Our decision largely turns on the plat filed by appellant when she developed the Breezy Point Subdivision in 1976. In that plat, appellant dedicated "all roads and easements for the use of the general public and for installation of utilities." While the plat depicted the only road, Breezy Point Drive, that ran through the entire subdivision containing nineteen tracts, it did not define or locate the dedicated easements. The sewer line easement in issue here runs north-south about eight feet inside the west boundary line of Breezy Point tracts 4A, 9, 10, 11 and 12, which tracts, themselves, are located on the west side of the subdivision. Breezy Point Drive fronts these five tracts along their east boundary lines and Dairy Hollow Road abuts them along their west boundary lines.

In 1983, appellee purchased property west of Dairy Hollow Road and Breezy Point Subdivision, and in 1984, he contacted officials with the City of Eureka Springs about his plans to build apartments on his newly-acquired land. After submitting his master plan for building the apartment units, the city officials gave appellee permission to connect to the north-south sewer line situated on the aforementioned five tracts in Breezy Point Subdivision. In making this connection, appellee constructed a sewer line from his land east, crossing Dairy Hollow Road and extending about eight feet onto tract 9, where the hookup was made and a manhole was installed. After learning of appellee's action, appellant filed this suit.

Appellant, by filing her plat on Breezy Point Subdivision, expressly dedicated that subdivision's utility easements for the use of the general public. Arkansas law concerning dedicated property is well-established, and in recounting that law in the early case of *Frauenthal* v. *Slaten,* 91 Ark. 350, 121 S.W.2d 395 (1909), the court said:

> An owner of land, by laying out a town upon it, platting it into blocks and lots, intersected by streets and alleys, and selling lots by reference to the plat, dedicates the streets and alleys to the public use, and such dedication is irrevocable.

* * *

The fact of dedication depends upon the intention of the owner to dedicate to the public, as clearly and unequivocally manifested. But it is held that "the intention to which courts give heed is not an intention hidden in the mind of the landowner, but an intention manifested by his acts."

See also Poskey v. Bradley, 209 Ark. 93, 189 S.W.2d 806 (1945); Holthoff v. Joyce, 174 Ark. 248, 294 S.W.2d 1006 (1927) and Hope v. Shiver, 77 Ark. 177, 90 S.W.2d 1003 (1905).

■ Appellant argues the plat she filed failed to specifically show any defined utility easements. Her plat's omission of such specifications is not fatal to her dedication of such easements. She immediately caused the construction of the sewer easement in question here in 1976 or 1977, shortly after her filing the plat. Cf. Bradley v. Arkansas Louisiana Gas Co., 280 Ark. 492, 659 S.W.2d 180 (1983) (wherein no specific location of right of way was given in grant; court held subject to accepted standards of reasonableness, grantee was free to locate pipe line, but once selected, the right of way becomes fixed). Also, the law of this state has been long established that an unbounded easement is a grant of a valid right of way and that the limits are to be determined by the lines of reasonable enjoyment. Fulcher v. Dierks Lumber & Coal Co., 164 Ark. 261, 261 S.W.2d 645 (1924).

Appellant's own testimony reflects she intended the sewer line dedicated for public use, but wishes to limit its use to preclude appellee. Although she claimed she had never dedicated the sewer line to Eureka Springs, she conceded the line connected to the city's main sewer line, and if the line on her tracts clogged or broke, she expected the city to fix it. She also testified that another developer (who owned property outside and north of appellant's subdivision), and "maybe" the city, had previously connected onto this Breezy Point sewer line. Mr. Charles Fargo, an inspector for the city, testified that he knew the city had "some type of an easement" to access and fix the sewer line and that the city maintained that line. Fargo said that the city had tapped the sewer line for another apartment development near appellee's property.

■ Thus, the record clearly reflects the appellant dedicated the sewer-line easement to the public, and, since then, the city has

accepted, maintained and tapped into that line. While appellant now seeks to limit access to the line, she had provided no such restriction or reservation in the Breezy Point plat which was used to dedicate the subdivision's utility easements. The respective rights of the public and owner dedicating easements are subject to the following rule:

> Unless there are reservations, the general public, that is to say any and everyone, has the right to use dedicated property to the full extent to which such easements are commonly used; and the person making the dedication may not object to such use whether the public owns the fee or only a right of way. However, no right exists to impose on the property dedicated burdens in addition to those placed on the property by the dedicator himself.

26 C.J.S. *Dedication* § 54 (1956).

Here, the city directed the appellee to hookup to the Breezy Point sewer line on Tract 9 and that connection indisputedly is a use which could reasonably and commonly be expected. In addition, appellant related that she had never intended to build anything "over the sewer line." Appellant's objection is that she had not intended the city or appellee to cross onto her tracts to intersect the line—an intention that has not been substantiated by her actions. Appellant has, by manifested acts, expressed that she expects the city to maintain the sewer line and had, even before this suit was filed, permitted the city to hookup to the line for a development north of her subdivision. Such actions only support her earlier dedication of the utility easement contained in the plat that was filed establishing Breezy Point Subdivision.

■ In this *de novo* review, we conclude the appellant had dedicated the sewer line easement to the general public, and, therefore, the appellee's sewer hookup was lawful and within the lines of reasonable enjoyment and compatible with the public sewer line.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. The majority opinion literally adds insult to injury inasmuch as the opinion not only allows the appellee to appropriate the appellant's property for his own use, it also takes away the piddling sum awarded by the trial

court. I am beginning to understand the dialogue between Socrates and Thrasymachus, as recorded by Plato in his *Republic,* where it is stated: "Justice is in the interest of the stronger."

The city had no right to permit the appellee to go onto appellant's property and connect his apartment complex's sewer system onto the appellant's privately installed system. I make these statements because I do not find anywhere in the record where the site of the connection was within the dedicated right-of-way. Apparently the majority finds no such dedication either as the opinion resorts to finding an "implied dedication."

According to the plat introduced into this record, the appellee constructed a manhole *outside the dedicated right-of-way* and connected his sewer to a line on the appellant's property. In all probability appellant deliberately installed the sewer line on her own property in order to prevent such intrusions as in the case before us.

The fact that the location of this particular connection was more desirable and less expensive than another does not authorize the appellee to privately condemn appellant's property for his own personal gain. I am not a real estate expert, but I am able to read the plat of Breezy Point Subdivision, and if the exhibit correctly locates the connecting point of appellee's sewer line, there is no doubt that the appellee trespassed upon appellant's property and permanently damaged it. The appellant should at least be indemnified for this permanent trespass on her property.