The Honorable Cliff Hoofman State Senator P.O. Box 1038 North Little Rock, Arkansas 72115
Dear Senator Hoofman:
This is in response to your request for an opinion on several questions concerning the subdivision of property in the City of Maumelle. Specifically, you state the following facts:
 Ordinances within the City of Maumelle require each subdivision to contain a percentage of the subdivision to remain as open space and or green space. In most cases, this property is deeded to the city. Apparently, there has developed some difficulties in the city maintaining some of these isolated open spaces and a desire on the part of some of the residents to enter into agreements with the city to utilize this open space property and maintain it.
You state that for the reasons above, you have been asked to inquire of the propriety of the city entering into agreements with its residents regarding some of these properties. Specifically, you have four questions which are as follows:
 1. Does a city of the first class have the authority to enter into agreements with one or more of its residents whereby the resident or residents would be allowed exclusive use of certain city owned real property. The use would be for private and not public or municipal purposes.
 2. In the event your answer to the above question is "yes," what must be contained in the agreement? Should there be a consideration, and could the resident or residents erect fences, gates or other obstructions to prohibit any other use by other citizens?
 3. Would such agreements by the city be in violation of any state law?
 4. Does state law allow a city of the first class to trade any of its real property for other real property owned by individuals?
It is my opinion that the answer to your first question is "no." A response to your second question is therefore unnecessary. The answer to your third question is "yes," and the answer to your fourth question is, as a general matter, "yes."
The relevant law regarding your first question is A.C.A. §14-56-417(b)(5)(B) and (b)(6), and the zoning ordinances and planning regulations of the City of Maumelle. The local planning state statutes provide that:
 (b)(5)(B)(i) The regulations [of local planning commissions] may require the reservation, for future public acquisition of land for community or public facilities indicated in the plan.
 (ii) This reservation may extend over a period of not more than one (1) year from the time the public body responsible for the acquisition of reserved land is notified of the developer's intent.
 (6) When a proposed subdivision does not provide areas for a community or public facility based on the plans in effect, the regulations may provide for reasonable dedication of land for such public or community facilities, or for a reasonable equivalent contribution in lieu of dedication of land, such contribution to be used for the acquisition of facilities that serve the subdivision.
The zoning regulations of the City of Maumelle, which were adopted as amended by Maumelle Ordinance No. 178, require that 10-15% of a gross planned residential district be designated as common usable open space. Regulation 7.4 (D)(a). The ownership and maintenance of these areas of open space is governed by Regulation 3.1.1, which provides as follows:
 Open space areas shall be maintained so that their use and enjoyment as open space are not diminished or destroyed. Open space areas may be owned, preserved, and maintained as required by this section by any of the following mechanisms or combinations thereof:
 1. Dedication of open space to the municipality or an appropriate public agency, if there is a public agency willing to accept the dedication.
 2. Common ownership of the open space by the Residence Association which assumes full responsibility for maintenance.
 3. Deed-restricted private ownership which shall prevent development and/or subsequent subdivision of the open space land and provide for maintenance.
Each of the alternatives above contemplate either public ownership and maintenance through dedication, or private ownership and maintenance. It is my opinion that these alternatives are not consistent with city owned and maintained property being used for exclusive private use. Both of alternatives 2 and 3 above, in my opinion, contemplate private ownership and maintenance of the open spaces. If the property is dedicated to public use, pursuant to alternative 1 above, unless there are reservations the general public (i.e. any and everyone), has the right to use dedicated property to the full extent to which the property is commonly used and the person making the dedication may not object to that use.Harvey v. Bell, 292 Ark. 657, 732 S.W.2d 138 (1987). Although it is conceivable under alternative 1 above, and the language of Harvey, that the developer could dedicate the property with a reservation that it be used only by certain residents, it is my opinion that such a dedication would be invalid. It has been stated that "since . . . it is one of the essentials of a dedication that it be made for the use of the public, the dedicator may not make a valid dedication to any private person or to any limited number of persons . . . [Footnotes omitted]." 26 C.J.S. Dedication § 32.See also Mingledorff v. Crum, 388 So.2d 632 (Fla 1980);Butler v. Shelton, 408 S.W.2d 530 (Civ.App. Tex. 1967); andGarland v. Clark, 264 Ala. 402, 88 So.2d 367 (1956). Additionally, such an action would be contrary to both the Arkansas Code and the Arkansas Constitution. The relevant planning statutes set out earlier contemplate dedication of the open spaces for "public or community facilities." A.C.A. §14-56-417 (6). The term "community" has been held to have a broader meaning than just including the members of a club or property owners in a particular area. See Flat Top Lake Ass'n,Inc. v. U.S., 868 F.2d 108 (4th Cir. 1989); Stewart v. Districtof Columbia Board of Zoning Adjustment, 305 A.2d 516, (D.C.App. 1973), and generally, Burrow v. Pocahontas School District No.19, 190 Ark. 563 (1935). Additionally, the expenditure of city tax dollars to maintain public property which is used exclusively for private purposes could be challenged as an illegal exaction under art. 16, § 13 of the Arkansas Constitution.
It is therefore my opinion that the answer to your first question is "no."
In light of this question, an answer to your second question is unnecessary.
The answer to your third question is "yes." An agreement providing for exclusive use of city owned and maintained "open space" would be contrary to state law, the state constitution, city ordinance and the common law of the state.
Your fourth question is whether state law will allow a city of the first class to trade any of its real property for other real property owned by individuals. Your question appears to be of a general nature, and does not specify any particular city property. It is my opinion that the answer to this question is generally "yes," so long as adequate consideration exists for the transaction. The Arkansas Code, at A.C.A. § 14-54-301 and 302, authorizes municipal corporations to "buy, sell, convey, lease, rent or let any real estate . . . owned or controlled by the municipal corporations." Although this statute does not address what consideration may be given for the transaction, it is my opinion that an exchange of other real property would be permissible, as long as the relative values are such that no failure of consideration will occur. See generally City ofFort Smith v. Bates, 260 Ark. 777, 544 S.W.2d 525 (1976); JamesCompany, Inc. v. Sheppard, 249 Ark. 81, 458 S.W.2d 752 (1970);City of Buffalo v. Joslyn, 527 P.2d 1106 (Wyo. 1974); Bobo v.City of Spartanburg, 230 S.C. 396, 96 S.E.2d 67 (1956); andDoll v. Flintkote Co., 79 So.2d 575 (La. 1955), aff'd231 La. 241, 91 So.2d 24 (1956).
Of course, if your question refers to the particular areas of "open space" referred to in your earlier questions, the zoning ordinances and regulations governing these areas must be taken into account, as well as the provisions of any applicable deeds or dedications.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh