The Honorable Boyd Hickinbotham State Representative P.O. Box 326 Salem, AR 72576-0326
Dear Representative Hickinbotham:
I am writing in response to your request for my opinion on the following question:
 Assuming the following facts: (a) a developer has created an entity to maintain a development; (b) several years later, the developer sold his interest to another developer; (c) several years later, the development became a properly incorporated city; (d) the developer is currently receiving a franchise fee from one utility located in the city and is attempting to collect a fee from a second utility; (e) all plats within the city show a utility easement; and (f) the city believes it owns the utility rights-of-way — who owns the utility rights-of-way and who should rightfully collect the franchise fees, if any, from the utility companies?
RESPONSE
If the developer sold lots subject to an unqualified easement recorded on filed plats, the developer dedicated the easement, i.e., the rights-of-way, irrevocably for public use but retains a fee interest in the dedicated property. Under these circumstances, in my opinion the public's easement rights vested in the city upon incorporation. Assuming the city has met the statutory requirements for contracting for utility services, in my opinion it has the right to collect franchise fees for intended use of the easement. I am neither sufficiently informed nor authorized to speculate on what remaining contractual rights, if any, the developer might have against the utility.
You indicate in your request that the plats within the city show a utility easement. Although you do not say so directly in your request, I will assume that the lots in this development were sold subject to the conditions referenced in the plats. The applicable law in this situation is aptly summarized in Op. Att'y Gen. 91-387:
 It has also been held as a "long-established rule" that when the owner of land plats it into lots and blocks and sells lots by reference to the plat, he is held to have dedicated the streets shown or indicated on the plat to public use, and such dedication is irrevocable. Wenderoth v. City of Fort Smith, 256 Ark. 735, 510 S.W.2d 296 (1974); [Arkansas State Highway Comm'n v.] Sherry, [238 Ark. 127, 381 S.W.2d 448 (1964),] supra, Wood v. City of El Dorado, 237 Ark. 681, 375 S.W.2d 363 (1964); Brown v. Land, Inc., 236 Ark. 15, 364 S.W.2d 659
(1963); and other cases too numerous to cite. It is not necessary that the plat contain dedicatory phrases or be signed by the owner, or that the streets be labeled or named. Sherry, supra, and Wenderoth, supra. See also generally Newton v. American Security Company, 201 Ark. 943, 148 S.W.2d 311 (1941).
 It also appears, however, that this rule applies in the absence of the expression of a contrary intention. Balmat v. City of Argenta, 123 Ark. 175, 184 S.W. 445 (1916); and generally, Jennings v. Russell, 209 Ark. 71, 189 S.W. 656 (1945).
 Whenever a public dedication becomes irrevocable, a public authority can accept the dedication for public use whenever the necessity occurs. Sherry, supra. It has been held that acceptance of the dedication may be by public use alone. Flake v. Thompson, 249 Ark. 713, 460 S.W.2d 739 (1970); and Wenderoth, supra. See also Bushmaier v. City of Little Rock, 231 Ark. 848, 335 S.W.2d 236 (1960) (holding that in spite of statute, city was not required to accept by ordinance).[1] The period of public use need not be for a period necessary to establish a way by prescription. Id. It also appears that acceptance by use can include the maintenance of the roads by the political subdivision. City of Jonesboro v. Kirksey, 239 Ark. 205, 388 S.W.2d 78 (1965). Unless there are reservations, the "general public" i.e., any and everyone, has the right to use dedicated property to the full extent to which those easements are commonly used and the person making the dedication may not object to that use without regard to whether the public owns the fee or only a right-of-way. Harvey v. Bell, 292 Ark. 657, 732 S.W.2d 138 (1987).
It is well established that a developer can dedicate a utility easement for public use even if the easement is not defined on the plat and does not run alongside a dedicated street or alley. Harvey v. Bell,292 Ark. 657, 732 S.W.2d 138 (1987).
You have failed to provide me with certain facts that might bear on your question. I do not know, for instance, whether the developer attempted in the plats or any original bill of assurances to qualify the extent of the conveyed easement. I have also not been provided the relevant plan or plans, i.e., land use plan, master street plan, and/or any other plans that have been prepared for the area encompassed by the city's planning area map. See A.C.A. 14-56-412 and -414. You have further failed to provide me the referenced plats, and I am consequently unable to confirm the locations of the easements. I also do not know whether the developer acceded to or participated in the process of incorporation — information that might prove significant to a finder of fact for reasons touched on below. Finally, you have not informed me what steps, if any, the municipality has taken to contract with utilities in its own name. I consequently can do little more than offer certain opinions based on reasonable assumptions and outline for you the legal standard the finder of fact should apply in reaching its decision.
You mention in your request that the successor developer is collecting what you term a "franchise fee" from a utility located within the city. However, nothing in the Arkansas Code addresses whether a private entity can collect a franchise fee from a utility serving a municipality. Section 14-200-101 of the Code provides that any municipality, "by ordinance or resolution of its council," may exercise jurisdiction to contract with a utility for services and to collect from the utility a "reasonable franchise fee," the amount of which is subject to review by the Arkansas Public Service Commission. Section 14-54-704 of the Code further authorizes "the mayor and city council, or the other governing bodies of municipalities having a commission, administrator, or city manager form of government" to contract with utilities for the use of "the streets, alleys, and public grounds of the municipality for such purposes, on such rates, charges, and terms as may be agreed upon." You have not indicated whether the municipality has adopted any such ordinance or resolution or entered into any such contract. It appears clear, however, that the council has the statutory power to do so.
I find it significant that the statutory powers outlined above are jurisdictional in character. The Code invests the municipality with the exclusive right to contract for municipal utility service, and I can find no authority for the proposition that this right can be qualified by the terms of a pre-incorporation contract between a private developer and a utility company.
With respect to the question of who owns the utility rights-of-way, inKralicek v. Chaffey, 67 Ark. App. 273, 280, ___ S.W.2d ___ (1999), the Court of Appeals reaffirmed the common-law rule that "when property [is] dedicated for a public purpose, such as a highway, the landowner retain[s] a fee ownership in the highway, subject to the public's right to use it." You have not indicated and I will not speculate who owns fee title to the dedicated property, but, assuming the property was platted and sold subject to an unrestricted easement, the public, as incarnated in the city government, clearly owns the easements, which by definition are rights-of-way. As the Court noted in Harvey v. Bell, 292 Ark. 657,661, 732 S.W.2d 138 (1987):
 The respective rights of the public and owner dedicating easements are subject to the following rule:
 Unless there are reservations, the general public, that is to say any and everyone, has the right to use dedicated property to the full extent to which such easements are commonly used; and the person making the dedication may not object to such use whether the public owns the fee or only a right of way. However, no right exists to impose on the property dedicated burdens in addition to those placed on the property by the dedicator himself.
26 C.J.S. Dedication 54 (1956).
(Emphasis added.) In City of Little Rock v. ATT Communications of theSouthwest, Inc., 318 Ark. 616, 620, 888 S.W.2d 290 (1994), the Court defined the term "franchise fee" and commented on a municipality's entitlement to collect it:
 We initially point out that the fee imposed by the City of Little Rock here against ATT is called a "franchise" fee. . . . By statutory law, a municipality may by ordinance assess and determine a rate/fee for service rendered by any public utility occupying streets (rights-of-way) within the municipality, and such an ordinance is deemed prima facie reasonable. Ark. Code Ann. 14-200-101—14-200-104. In common parlance, such franchise fees are, in form, rental payments for a public utility's use of the municipality's right-of-way, and such fees are reviewed by the PSC. 14-200-101(b)(1).
In my opinion, both common sense and the express directives of the statutes discussed above dictate that the city, as owner of the rights-of-way, is entitled to contract to realize their intended use and to recover any value accruing therefrom, just as it is burdened with the cost of maintaining the easements to serve their intended use. See
A.C.A. § 14-301-101(1) (charging the city council with the "care, supervision, and control" of all streets).
I do not consider the conclusion just stated as potentially sanctioning any impairment of contract between the developer and any utilities that may have served the pre-incorporation development and/or the city. Any arrangement for the provision of utility services made prior to incorporation was necessarily a matter of private contract, and nothing in the applicable statutory or case law suggests that a newly formed city can be charged with breach of that contract. See Arkansas Power LightCompany v. West Memphis Power Water Company, 187 Ark. 41,58 S.W.2d 206 (1933) (affirming that newly incorporated town had authority to contract exclusively with one utility even though another utility had served the area before incorporation). Assuming, then, that the city has taken or will take appropriate steps to contract for utility services, it is my opinion that it alone will be entitled to recover franchise fees. I cannot and am not authorized to opine on the purely private contractual relationship between the developer, any previous property owners' organization and any utilities with which they may have contracted. Any questions regarding the status of such contracts, such as whether they are extinguished by frustration of purpose or impossibility because of the incorporation or whether any promotion of or acquiescence in the incorporation might support an estoppel, should be addressed to private counsel.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
[1] The referenced statute is A.C.A. § 14-301-102, which requires that dedication be "accepted and confirmed by an ordinance specifically passed for that purpose."